IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 12, 2005 Session

## ROY WILSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-27002     Arthur T. Bennett, Judge**

---

**No. W2004-01256-CCA-R3-PC  - Filed August 31, 2005**

---

The petitioner, Roy Wilson, pled guilty to four (4) counts of aggravated rape, eleven (11) counts of especially aggravated kidnapping, seven (7) counts of aggravated robbery, and two (2) counts of aggravated burglary, for convictions stemming from multiple indictments.  As a result of the guilty pleas, the petitioner received a fifteen (15) year sentence for one (1) of the aggravated rape convictions that was ordered to run consecutive to all of the other convictions, which ran concurrent to each other for a total of fifteen (15) years, for a total effective sentence of thirty (30) years.  The petitioner filed a pro se petition for post-conviction relief based upon ineffective assistance of counsel with respect to his guilty plea on one (1) of the aggravated rape convictions.  After an evidentiary hearing, the post-conviction court denied the petition.  On appeal, the petitioner challenges the trial court's denial of the petition.  Because the petitioner failed to prove that he received ineffective assistance of counsel or that his guilty plea was involuntary, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Paul J. Springer, Memphis, Tennessee, for the appellant, Roy Wilson.

Paul G. Summers, Attorney General and Reporter; Seth Kestner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Chris Scruggs, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In 1999, the Shelby County Grand Jury returned multiple indictments against the petitioner arising out of two (2) separate events, occurring on July 21 and August 31, 1999.  Pursuant to a plea

agreement with the State, several of the charges were dismissed or nolle prossed in exchange for guilty pleas to four (4) counts of aggravated rape, eleven (11) counts of especially aggravated kidnapping, seven (7) counts of aggravated robbery and two (2) counts of aggravated burglary. As a result, the petitioner received an effective sentence of thirty (30) years. During the plea hearing, the prosecutor stated that if the case had gone to trial, the State would have proven that:

On August 31st, 1999, late in the evening, the victims in this case, Cory Johnson and Tiffany Porter returned with their two small children, . . . to their apartment on Commonwealth Avenue, found a group of gentlemen standing outside. As the victims walked up the stairs in their apartment complex, four - the defendant and the co-defendants approached them at gunpoint, at which point the victim, Cory Johnson, tried to escape by running away. The defendant fired a shot. The victim was not hit, but he returned and was forced into the apartment at gunpoint.

Once inside the apartment, the victims were split. Ms. Porter and her children were forced into a bedroom. A pillowcase or mask was put over her head as was Mr. Johnson who was taken into the kitchen . . . .

Mr. Johnson was stabbed repeatedly in the leg. Money was demanded of him. Threats were made to him.

In the bedroom where Ms. Porter and her children were, she was forcibly raped several times and later was forced to go to the bathroom to the bathtub to wash herself - to wash away the evidence of the crime. While she was left in the bathroom, . . . Cory Johnson, was able to escaped [sic] jumped out of the . . . window . . . and was able to run for help.

. . . .

Ms. Porter had numerous items of personal property stolen in that incident from the apartment.

. . . .

[T]he facts would [also] be on July 21st, 1999, the defendant and his co-defendants in that matter went to a house at 5063 Christopher. Inside of the house were Dena Taylor and Albert Smith and Mr. Smith's eight-year-old son, Kevin.

Initially Rashe Moore and Genore Dancy entered the apartment, ordered all the occupants to strip, demanded money at gunpoint. Eventually they were forced to strip and removed to the kitchen. The co-defendants, including the defendant, later joined in the apartment, and while they were in robbing . . . other victims . . . came up to the apartment . . . and were forced inside at gunpoint . . . .

As those victims arrived at the apartment while the crimes were going on, they were each forced to strip, robbed of their personal belongings, and forced into the kitchen where the entire group was bound by duct tape, a sheet was put over their heads to cover them . . . .

In the course of the kidnapping, Shauntel Knox and Latoya Knox were each separately raped by one of the defendants. Dena Taylor was initially raped by Genore Dancy. Then after the others had arrived, she was pulled out of the . . . kitchen. She was pulled out and raped by several of the defendants . . . .

When the defendants left the house, they left . . . in one of the victim's trucks.

The petitioner subsequently filed a petition for post-conviction relief, alleging ineffective assistance of counsel with respect to his guilty plea on one (1) of the aggravated rape conviction that ran consecutively to the sentences on the other convictions.

Post-Conviction Hearing

The post-conviction court held an evidentiary hearing on the petition on February 12, 2004. The evidence at the hearing consisted of the following. The petitioner testified that his trial counsel was ineffective because he forced the petitioner into pleading guilty by explaining to him that the plea was his "best option." The petitioner felt that trial counsel was ineffective because he failed to call two (2) witnesses, failed to give the petitioner discovery on the aggravated rape conviction that ran consecutive to the other charges and never gave the petitioner the results of the DNA testing. The petitioner admitted that trial counsel visited with him approximately two (2) or three (3) times while he was awaiting trial. The petitioner stated that he told counsel repeatedly that he wanted to go to trial and claimed that the matter was set for trial five (5) or six (6) times prior to the guilty plea hearing. The petitioner stated that he felt he was being forced into the guilty plea when his attorney told him he was going to lose at trial and that the trial court would give him a 1,700-year sentence.

The petitioner conceded on cross-examination that he participated in a lengthy plea colloquy with the trial judge and was asked whether he was entering the plea of guilty freely and voluntarily and that he responded affirmatively to the trial judge's questions. The petitioner also admitted that this was not his first guilty plea.

The assistant district attorney that handled the case for the State testified that, if convicted on all the charges as indicted, the petitioner was facing a possible sentence of 1,410 years. The State's attorney also stated that the petitioner was set to enter a plea in the case herein on two (2) separate occasions. On the first occasion, the plea was withdrawn for unspecified reasons. On the second occasion, the petitioner went through with the plea. The assistant district attorney explained that he provided the petitioner's trial counsel with all the discovery and DNA evidence that was in the file and that the State was prepared to proceed to trial on a criminal responsibility theory.

Trial counsel for the petitioner was unavailable to testify. According to the attorney for the State, trial counsel for the petitioner was not practicing law at the time of the post-conviction hearing because his license had been suspended for failure to complete the mandatory continuing legal education requirements.[1]

The post-conviction court denied the petition after hearing the evidence. On appeal, the petitioner argues that his guilty plea was not knowingly and voluntarily entered and that he received ineffective assistance of counsel.

## Post-Conviction Standard of Review

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Shields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## Ineffective Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law

---

[1] Despite trial counsel's suspension, we fail to see why counsel was unable to testify as a witness.

-4-

and fact . . . ; thus, [appellate] review of [these issues] is <u>de novo</u>" with no presumption of correctness. <u>Burns</u>, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. <u>See</u> <u>Adkins v. State</u>, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. <u>See</u> <u>id.</u> However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. <u>See</u> <u>Cooper v. State</u>, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In the case herein, the petitioner argues that trial counsel was ineffective because he failed to properly investigate the case and did not provide the petitioner with discovery materials and the evidence against him. Further, the petitioner argues that trial counsel forced him to plead guilty.

After listening to the testimony at the post-conviction hearing, the trial court determined that

[T]he Court has heard your Post Conviction Petition and you're petitioning the Court in this one case here of aggravated rape, . . . . You entered a guilty plea to this case along with a lot of others of aggravated rapes, other aggravated kidnappings and things.

. . . .

And you were not a novice like you had indicated initially. You were a multiple offender, had numerous convictions before all of these convictions came. I mean, all of these cases came about. So it's not a situation that you're in a dither as to what's going on. You knew what was going on.

And the Judge asked you all these questions about whether you wanted to plead guilty, whether you're doing it freely and voluntarily, anyone threatening you, forcing you, coercing you, anything like that. You said no. And you were somebody that had been through the system knowing this had been asked you numerous occasions in the past. So you're not telling me, you're not telling this Court that you didn't know what you could do.

You knew what you could do. You could have just said I want a trial and stayed with that, or told the Judge when he asked you these questions, that I want a trial, Your Honor. My attorney is saying that I should go ahead and enter a plea of guilty to this and accept this offer, but I want a trial. You knew you had - - you weren't scared to do that.

Now, attorney's job is to help you. In other words to give you his best advise. His advice is his stock and trade . . . . [H]e . . . may have suggested to you that you

-5-

need to take this offer because based on all of these cases and your background, you're at least a Range 2 offender, multiple offender, and this offer of 30 - - dropped it from 60 to 30 total.

And I find no ineffective assistance of counsel at all on this. I find - - what I find is you're coming back some years later because you are not satisfied now with the fact that you're serving the time. I don't find that you didn't know what was going on, that you did not know what you were doing at the time.

. . . .

Alright, so the Court's of the opinion that I don't see anything in this hearing that would indicate that this defendant did not plead freely and voluntarily, and he knew what he was doing when he pled guilty to all of these charges. And there's no ineffective assistance of counsel at all in this matter.

In order for the petitioner to prevail herein, he must show, by clear and convincing evidence, that his attorney failed to properly advise him of the possible consequences of his plea and that trial counsel's failure to do so resulted in prejudice. Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. See Hill v. Lockhart, 474 U.S. 52, 56 (1985) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). As stated above, in order to successfully challenge the effectiveness of counsel, the petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. See Baxter, 523 S.W.2d at 936. Under Strickland v. Washington, 466 U.S. at 687, the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

The record does not preponderate against the finding that trial counsel was effective. Implicit in the post-conviction court's findings and conclusions was that the court did not accept the testimony of the petitioner as credible. "[Q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odum, 928 S.W.2d 18, 23 (Tenn.1996). As stated previously, this Court affords the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. After a de novo review, we conclude that the evidence in the record does not preponderate against the post-conviction court's decision that trial counsel was effective.

Voluntary and Knowing Guilty Plea

The second issue raised by the petitioner in this post-conviction appeal questions the knowing and voluntary nature of his guilty plea.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Alford, 400 U.S. at 30. The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 191 S.W.2d 346, 353 (Tenn. Crim. App. 1995); see also Chamberlain v. State, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Specifically, a reviewing court must consider "the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial." Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Id. at 904. The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999); Blankenship, 858 S.W.2d at 904.

In Boykin v. Alabama, the United States Supreme Court held that an accused's guilty plea must be voluntarily, knowingly, and understandingly entered before a conviction resting upon a guilty plea may comply with due process. 395 U.S. 238 (1969). In Boykin, the Supreme Court stated that a guilty plea constituted a waiver of various rights and that it would not presume a waiver of the following federal constitutional rights from a silent record: (1) the privilege against compulsory self-incrimination; (2) the right to trial by jury; and (3) the right to confront one's accusers. Id. at 242. Thus, Boykin placed a premium on a showing in the record of a sufficient waiver of these specified rights.

Exercising "its supervisory power to [e]nsure that the courts of this State afford fairness and justice to defendants in criminal cases," our Supreme Court, in State v. Mackey, 553 S.W.2d 337, 340-41 (Tenn. 1977), developed stricter standards than those mandated by the Boykin decision, superseded on other grounds by Tenn. R. Crim. P. 37(b) & Tenn. R. App. P. 3(b). Mackey requires that trial judges accepting pleas of guilty in criminal cases substantially adhere to the following procedure:

[T]he court must address the defendant personally in open court and inform him of, and determine that he understands, the following:
(1) The nature of the charge to which the plea is offered, and the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and, if applicable, that a different or additional punishment may result by reason of his prior convictions or other factors which may be established in

the present action after the entry of his plea; and

(2) If the defendant is not represented by an attorney, that he has a right to be represented by an attorney at every stage of the proceeding against him, and if necessary, one will be appointed to represent him; and

(3) That he has a right to plead not guilty or to persist in that plea if it has already been made, and, that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

(4) That if he pleads guilty, there will not be a further trial of any kind except to determine the sentence so that by pleading guilty he waives the right to a trial; and

(5) That if he pleads guilty, the court or the state may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement, and, further, that, upon the sentencing hearing, evidence of any prior convictions may be presented to the judge or jury for their consideration in determining punishment.

Id. at 341. The Mackey court also stated:

The court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty results from prior discussions between the District Attorney General and the defendant or his attorney.

Id. The Mackey requirements have been adopted into Rule 11 of the Tennessee Rules of Criminal Procedure.

The lengthy colloquy between the petitioner and the trial court at the plea hearing indicates that the trial court asked the petitioner if the plea was freely and voluntarily made; if he had been informed of the elements of the crime, burden of proof, and defenses; and if he understood: (1) the nature of the charges against him; (2) that by pleading guilty he was giving up the right to a trial by jury; (3) that by pleading guilty he was giving up the right to confront witnesses; and (4) that by pleading guilty he was giving up the right to self-incrimination. In other words, the trial court satisfied the requirements of Boykin. Moreover, the petitioner had pled guilty in the past and presumably was aware of his options even before this colloquy, The petitioner has failed to prove that his guilty plea was not knowing or voluntary. This issue is without merit.

Conclusion

-8-

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____

JERRY L. SMITH, JUDGE